*252
 
 Ruffin, C. J.
 

 The answers filed fully remove the imputation upon the integrity of the commissioners, and meet the allegations respecting the defects in the title and conveyance, and the inconvenience of the place solicited to the mass of the people of the county, and upon the merits of the case seem clear for the defendants, according to the answers. It appears, however, that there was a mistake in the act in naming the person, at whose house the County Courts were to be held and within five miles of whose residence the county seat was to be fixed by calling him
 
 Murrel Mills,
 
 when there is no such person m the County, and the answers state that
 
 Marvill Mills
 
 was meant. That circumstance and the singular mistake respecting the periods for holding the Courts create the only difficulty, that could be raised in the case, by giving colour to the doubt, as to the power of the justices to hold a Court, appoint a chairman and the commissioners, or do any other acts. We do not think there is a great deal in an objection of that kind, when urged in opposition to the entire administration of justice or the existence of any judicial tribunal in a County. But the court does not deem it necessary to discuss those questions, nor to advert to the answers particularly, or to the other objections taken in the Court below, one of them excepted, because on that our opinion is clear, that the bill will not lie. It is, that this is a subject not cognizable in a Court of Equity. It is an attempt to restrain public agents in the discharge of a public duty from per» forming their office, because they are acting or supposed tobe acting so unfaithfully, corruptly, and illegally to detriment, not of any individual in particular, but of public at large, or of a county at least. There is no such jurisdiction, we think. If, indeed, persons acting under a statute as commissioners to lay out a road, for example, or perform any other function of the like naunnecessarily and improperly encroach upon the rights and property of the citizen, or erect a nuisance to
 
 *253
 
 his annoyance and injury, doubtless a Court of Equity will, at the suit of the citizen,
 
 protect him by
 
 injunction'. For the color of a public appointment, though conferred even directly by the Legislature, cannot justify private wrong, nor induce the Court to withhold its power of preventive justice in anticipation of irremediable mischief to the citizen, if the case be otherwise a proper one to call for such an exertion of the power of the Court. But here no one complains of any such impending injury; but the gravamen of the bill is, that the Court is to be placed at a point, not as convenient to a majority of the citizens as it might be, and, secondly, that owing to certain doubts of the legality of the proceedings, in making the selection and appointing agents for the sale of the lots, as good prices cannot probably be had for the lots, as if these were no such doubts. That is said to constitute it a case of impending irreparable loss, calling for the interposition of the Court of Equity. Now, if it were such a case of loss as that supposed, still these relators would have no right to institute this proceeding, for they have sustained no private wrong in the matter to be redressed, nor have they a seperate interest to be protected. The loss, if any, is to fell on the public, the State, or the County, and the power and duty ©f guarding those interests are not in private persons, undertaking the office of relators, but devolve on the high officers of the State, acting in their own names
 
 ex-officio.
 
 But, if this were an information by the Attorney General ex-officio, we should still hold, that it would not lie. We know not of such a jurisdiction, and no instance of its exercise has been cited to us. The case made in the information is one of usurped public authority, or of the illegal and corrupt exercise of a public power ; acts, which amount to offencesor defaults,to be remedied in a different way. The State does not come into the Court of equity to enjoin her officers against a breach or omission of duty, but she enforces the performance of a public trust by
 
 *254
 

 mandamus
 
 or enquires into their authority, and deprives them of that usurped, by
 
 Quo warranto.
 
 That would have been the proper course here, if the officer charged with that duty had, for reasons affecting the public, deemed this a fit case for his
 
 ex-officio
 
 interference, a thing that could hardly be expected under the circumstance. Equity can no more interfere to prohibit the commissioners from exercising their judgments in the selection of a place, for a County town and public buidings or from raising money for the erection of those buildings by a sale of the town lots, then it would to prevent by injunction the justices of the County from laying a tax for those or other purposes, that some one might think impolitic and pre-judicial, or to compel them to levy one, that might be beneficially applied. Then commissioners and the justices of the peace in such cases act as political agents, and are answerable
 
 crirninaditer
 
 for corrupt misfeazances or nonfeazances, and maybe enforced to do their duty by means provided by the common law, or such as may be provided by the legislature. A chancellor cannot undertake to interfere with their political functions, either to punish or prevent the commission of crimes or acts that partake of the nature of crimes, of public offences of commission or omission — we might as well undertake to issue an injunction upon the ground that it was impolitic to establish the County. For this reason the Court holds that the injunction ought to have been dissolved with costs, to be paid by the relators, who must also pay the costs in this Court.
 

 Per Curiam.
 

 Ordered to be certified accordingly.